IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:21-cv-00125-MR-WCM

| | |
|---|---|
| SHANNON JOHNSON IKARD, ) ) Plaintiff, ) ) v. ) ) COMMISSIONER OF THE SOCIAL ) SECURITY ADMINISTRATION, ) ) Defendant. ) _____ ) | MEMORANDUM AND RECOMMENDATION |

This matter is before the court on Plaintiff's Motion for Judgment on the Pleadings and the Commissioner's Motion for Summary Judgment (Docs. 10, 12), which have been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I.   **Procedural Background**

In January of 2017, Plaintiff Shannon Johnson Ikard ("Plaintiff") filed applications for disability insurance benefits and supplemental security income alleging disability beginning on January 1, 2010. See Transcript of the Administrative Record ("AR") 77. Those claims were denied in April of 2019. AR 86.

1

In July of 2019, Plaintiff filed another application for supplemental security income, alleging disability beginning on July 18, 2019. AR196-202; AR 38; AR 269.

On December 18, 2020, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued an unfavorable decision. AR 12-35. That decision is the Commissioner's final decision for purposes of this action.

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "obesity, degenerative disc disease cervical, degenerative disc disease of left knee and right wrist, post-traumatic stress disorder (PTSD), major depressive disorder with anxious distress and borderline personality disorder." AR 18. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform light work…The claimant can frequently stoop, kneel, and crawl. The claimant can perform frequent but not constant overhead reaching bilaterally. The claimant can understand, remember and carry out unskilled work of a routine nature, can maintain attention and concentration for at least 2-hour periods of time sufficient to carry out unskilled work, in the course of a normal workday for normal work week. The claimant can adapt to routine workplace changes at a non-production pace (meaning no assembly line, conveyor built [sic] type jobs, or piece

2

rate pace), with occasional interaction with the general public and frequent but not constant interaction with coworkers and supervisors, meaning work not requiring teamwork for task completion.

AR 21.

Applying this RFC, the ALJ found that Plaintiff had the ability to perform her past relevant work such that Plaintiff was not disabled during the relevant period. AR 29-30.

### III. Plaintiff's Allegations of Error

Plaintiff argues that the ALJ did not evaluate certain opinion evidence appropriately, failed to acknowledge evidence contrary to the ALJ's conclusions regarding Plaintiff's mental limitations, used inappropriate language in the decision, and failed to consider the observations of a Social Security interviewer.

### IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe

v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## V. Discussion

### A. Consideration of Opinion Evidence

For applications filed on or after March 27, 2017, such as Plaintiff's, the Administration has changed how adjudicators assess medical opinions and prior administrative medical findings. See 82 Fed. Reg. 5844-01; 20 C.F.R. §

4

404.1520c(a)); 20 C.F.R. § 416.920c(a).[1] Specifically, an ALJ is now required to consider and articulate in the administrative decision how persuasive he or she finds each medical opinion or prior administrative medical finding to be. 20 C.F.R. §§ 404.1520c(a)); 416.920c(a). In that regard, the regulations list numerous factors that are considered, as appropriate: supportability, consistency, relationship with the claimant, specialization, and "other factors" (such as familiarity with other evidence in the claim or an understanding of program policies and evidentiary requirements). Of these factors, "supportability" and "consistency" are the most important. See 20 C.F.R. §§ 404.1520c(a) & (c); 416.920c(a) & (c). "Supportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself. Consistency is an external check that references evidence from other medical and nonmedical sources." Bright v. Saul, No. 1:19CV504, 2020 WL 4483008, at *2 (M.D.N.C. Aug. 4, 2020).

Here, Plaintiff argues that the ALJ improperly discounted the opinion of Chrissy Fohr, a nurse practitioner with Lake Norman Pain & Weight

---

[1] The revised regulations define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review…in your current claim based on their review of the evidence in your case record." See 20 C.F.R. §§ 404.1513(a)(5); 416.913(a)(5). Prior administrative medical findings include state agency consultant findings regarding the severity of a claimant's symptoms, whether a claimant's impairments meet or medically equal a listing, and a claimant's residual functional capacity. Id.

Management who provided "routine treatment" for Plaintiff's chronic cervical spine stenosis. See AR 23. In a "Physical Medical Source Statement," Ms. Fohr indicated that Plaintiff could walk less than one city block, sit for about two hours in an eight-hour workday, stand or walk for about two hours in an eight-hour workday, rarely lift and carry less than ten pounds, never climb ladders, rarely climb stairs or crouch or squat, and occasionally stoop and twist. AR 715-716. Ms. Fohr also indicated that Plaintiff had significant limitations in reaching, handling, and fingering; would be off task more than 25% of a workday, was incapable of even "low stress" work, and would be absent from work more than four days per month. AR 716-717.

The ALJ found that Ms. Fohr's opinion was "not persuasive" because it was "not supported by her own treatment records and [was] not consistent with the preponderance of the objective medical records." AR 25. The ALJ did not provide citations supporting that specific conclusion but did, in another portion of her opinion, discuss Ms. Fohr's treatment as follows:

> The records reflect that the claimant received routine treatment from Chrissy Fohr….The claimant reported her usual cervical pain and that medication helped some and described no side effects and compliant with dosing regimen. She reported left knee pain and buckling without warning. The claimant persistently denied excessive worry, memory loss, and depression. Ms. Fohr documented that the claimant exhibited decreased range of motion of cervical region in all directions, decreased grip on left side, diminished resistance compared to right, trapezius tenderness,

6

> presence of myofascial triggers, pain with flexion and extension with diffuse myofascial tenderness present over paralumbar area and painful range of motion of left knee with swelling. She noted the claimant's gait was antalgic favoring left side. However, the claimant exhibited negative straight leg raise and normal sensation. She noted the claimant's BMI of 37.77 or greater. She assessed the claimant with cervicalgia, radiculopathy, cervical region, long-term use of opiate analgesic, myalgia and overweight. She noted some neuropathies in the claimant's upper extremities due to her cervical spine disease. She continued to prescribe oxycodone-acetaminophen and recommended weight loss. On subsequent visits, the claimant continued to report pain radiating from neck and mid back stopping at upper arms causing decreased function, anxiety, fatigue, headache, movements at night, poor sleep, weakness and nausea. She detailed bending, sitting, standing, working, household chores, lifting, movement, driving and riding made her pain worse. Nevertheless, Ms. Fohr reported that claimant's pain was managed with medication and continued to prescribe the claimant oxycodone-acetaminophen.
>
> AR 23-24 (citing AR 571-623; AR 632-635; AR 705-713; AR 2420-2441).

Nonetheless, the undersigned is unable to determine from this description the basis for the ALJ's conclusion that Ms. Fohr's opinion is inconsistent with her treatment records and inconsistent with objective evidence. For example, to the extent the ALJ concluded that Plaintiff's pain was managed adequately with medication, Ms. Fohr's treatment records include potentially contradictory information. Compare AR 2439 (February 12, 2020 record indicating Plaintiff "continues having severe pain that interferes

7

with ADLs"); AR 633 (September 25, 2019 record reflecting that Plaintiff "was not able to get out of bed using medications" and that "[r]ight now the main issue is the mediations are not improving [Plaintiff's] function"); AR 572 (August 6, 2019 treatment record reflecting Plaintiff "is very limited in the activities due to pain. Medications help some and without them she would not be able to function" and that Plaintiff was having difficulty with ADLs)); AR 575 (April 29, 2019 treatment record reflecting Plaintiff's report of difficulties with ADLs); AR 578 (March 26, 2019 treatment record reflecting that Plaintiff "requires medications for pain to keep her as functional as possible"); AR 581 (February 27, 2019 record indicating Plaintiff "isn't very functional right now" and was having difficulty with ADLs); AR 590 (November 27, 2018 treatment record noting Plaintiff was "having significant pain and the medication is not working well"); AR 608 (May 16, 2018 record noting Plaintiff reported being "basically bed ridden") <u>with</u> AR 605 (June 18, 2018 record indicating that Plaintiff was using oxycodone for pain "which keeps her functional and active"); AR 618 (February 13, 2018 record indicating the same); AR 705 (January 15, 2020 record indicating Plaintiff "is able to function due to medications"); AR 2426 (June 4, 2020 record indicating Plaintiff's pain was "generally managed with medications").

Additionally, it is not clear what "objective medical records" the ALJ found to be inconsistent with Ms. Fohr's opinion.

8

The undersigned will therefore recommend remand. See Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (ALJ must build "an accurate and logical bridge from the evidence to his conclusion"); Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (same); see also Mayberry v. Berryhill, No. 5:17-cv-175-GCM, 2018 WL 3543085, at *3 (W.D.N.C. July 23, 2018) ("A failure to provide an adequate explanation frustrates the ability of the Court to conduct meaningful review and determine whether the ALJ's decision is supported by substantial evidence"); Lovingood v. Berryhill, 1:18-CV-00008-GCM, 2019 WL 1412940, at *2 (W.D.N.C. March 28, 2019) (summary of doctor's opinion, followed by statement that such opinion was inconsistent with the medical record and the claimant's self-reported activities, failed to provide "any specific examples of contradiction that resulted in 'little weight' being given to the opinion such that "the ALJ left the Court powerless to conduct any meaningful review").

### B. Discussion of Evidence Related to Plaintiff's Mental Health

When discussing Plaintiff's mental health, the ALJ acknowledged that Plaintiff had been evaluated at Easter Seals UCP and discussed Easter Seals' treatment records from October 2019 and February 2020. AR 25 (citing AR 679-687 (October 7, 2019 – October 21,2019); AR 2392-2413 (February 19, 2020 – February 25, 2020)). The ALJ noted that Plaintiff had been diagnosed with PTSD, major depressive disorder with anxious distress, and borderline

9

Case 5:21-cv-00125-MR-WCM   Document 14   Filed 08/30/22   Page 9 of 15

personality disorder, and stated that while outpatient therapy and medication management were recommended, the evidence was "void of any further treatment." AR 25.

Plaintiff argues, however, that she obtained mental health treatment and medication management "on multiple occasions." Doc. 11 at 14 (citing AR 629-631; AR 2388-2390, 2385, 2379-2382). Additionally, Plaintiff contends that her treatment history is "consistent with the consultative examination report" prepared by Dr. Sean Fowler, PsyD, and that the ALJ erred in her consideration of Dr. Fowler's opinion. Doc. 11 at 15 (citing AR 698-704); Doc. 11 at 13.

"[T]he substantial evidence standard 'presupposes…a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" Dunn v. Colvin, 607 Fed. Appx. 264, 274 (4th Cir. 2015) (quoting Clarke v. Bowen, 843 F.2d 271, 272-273 (8th Cir. 1988)). At the same time, "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (remand appropriate because the same medical records that contained the "normal" findings relied upon by the ALJ also included notations

that plaintiff presented with constant pain and was given a steroid injection); see also Arakas v. Commissioner, Social Security Administration, 983 F.3d 83, 99 (4th Cir. 2020) (vacating ALJ's decision where ALJ cherry picked certain facts and misstated and mischaracterized other material facts). In sum, when weighing the evidence, the ALJ cannot ignore material evidence that is contrary to his or her decision.

Here, certain medical records on which Plaintiff relies pre-date her alleged disability onset date. See Doc. 11 at 14 (citing AR 2388-2390, 2385, 2379-2382 (records reflecting that prior to Plaintiff's alleged disability onset date, she carried a diagnosis of chronic anxiety, and was prescribed various medications related to her mental health)). The undersigned is not persuaded that the ALJ's failure to discuss those records was an error that requires remand.

However, the ALJ's discussion of Plaintiff's mental health treatment following her alleged disability onset date is more problematic. Specifically, although the ALJ analyzed certain treatment records from the relevant period and stated that Plaintiff failed to obtain "further treatment," a treatment log included in the administrative record indicates that Plaintiff had multiple additional therapy sessions. See Doc. 11 at 14 (citing AR 629-631 (log indicating multiple individual and group therapy sessions as well as outpatient "psych" services from February 2019 through November 2019)).

Additionally, while the ALJ spent a significant portion of her opinion discussing Dr. Fowler's report, see AR 25-27, the ALJ did not sufficiently explain her conclusion that Dr. Fowler's opinion was "not persuasive because it [was] based only on a snapshot of the claimant's functioning and on the claimant's subjective complaints" and was "inconsistent and not supported by the preponderance of the evidence." AR 27. The ALJ did not provide specific citations to the evidence she found to be inconsistent with Dr. Fowler's opinion, and the undersigned is unable to determine what evidence the ALJ relied on in that regard.[2]

The undersigned will therefore recommend remand on this basis as well.

### C. Inappropriate Language

"[A]n ALJ may not use 'emotionally charged words' or 'personal judgments or opinions' in a decision and may not use the decision 'as a forum for criticizing … the claimant.'" Atwater v. Commissioner of Social Security, No. 1:20-CV-00735, 2021 WL 3174339 at *15 (N.D. Ohio July 9, 2021) (citing

---

[2] The ALJ did include some mental limitations in Plaintiff's RFC, explaining that she found the opinions of the state agency psychological consultants, Dr. Christmas Covell and Dr. Darolyn Hilts, persuasive. See AR 28 (discussing mental residual functional capacity assessments completed by Dr. Covell (AR 101-103) and Dr. Hilts (AR 118-120)). However, the ALJ did not cite specific evidence that supported her conclusion that these consultants' opinions were "consistent with the preponderance of the evidence reviewed." AR 28. Additionally, although the ALJ stated that these opinions were consistent with the previous ALJ's decision, that previous decision did not include any mental limitations in Plaintiff's RFC. See AR 74-86 (April 11, 2019 decision).

Social Security Hearings, Appeals, and Litigation Law Manual (HALLEX) 1-2-8-25(A)).

Here, Plaintiff asserts that the ALJ's use of quotation marks around certain phrases in her decision implied "disbelief and disregard" and "could indicate that the decision was pre-judged or not fairly considered…." Doc. 11 at 16.

The undersigned is not persuaded by this argument. The specific phrases at issue were taken directly from Dr. Fowler's report, and the ALJ used the exact phrasing and punctuation as used in that report. See AR 26; AR 699. See McAuley v. Colvin, No. 7:12–CV–311–D, 2013 WL 7098724 (E.D.N.C. Dec, 13, 2013) (citing Simpson v. Macon County, N.C., 132 F.Supp.2d 407, 411 (W.D.N.C. 2001) (a plaintiff alleging ALJ bias bears a "heavy burden" of proof); Morris v. City of Danville, 744 F.2d 1041, 1044 (4th Cir. 1984); Hucks v. Colvin, No. 2:12–cv–76, 2013 WL 1810658, at *7 (N.D.W.Va. Apr. 3, 2013)).

### D. Discussion of Interview Notes

Finally, Plaintiff contends that the ALJ erred by failing to consider the following observation recorded by a Social Security Administration employee who conducted a face-to-face interview with Plaintiff on August 7, 2019: "The interview was about an hour long so she had a hard time standing up and walking as she left." Doc. 11 at 16 (citing AR 219).

In formulating an RFC, however, an ALJ is not required to discuss every piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). Further, though the interviewer indicated that Plaintiff had no difficulty sitting, standing, or walking, AR 218, the ALJ included certain limitations in Plaintiff's RFC relative to Plaintiff's ability to stand, sit, and walk. While the ALJ would be free to consider such notes explicitly if this matter is remanded as discussed above, the undersigned is not persuaded that the ALJ's failure to discuss the August 7 notation, without more, necessitates remand.

## VI. Recommendation

The undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 10) be **GRANTED**, and the Commissioner's Motion for Summary Judgment (Doc. 12) be **DENIED**.

Signed: August 30, 2022

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).